WEIS, Circuit Judge,
Concurring and Dissenting.
I am pleased to join the majority opinion but write separately on two issues. There is no discussion in that opinion of the size of the attorneys’ fees included in the settlement: 31% of the $24 million settlement ($7.44 million). To my mind, the record does not demonstrate adequate support for *359 the amount awarded and, because we are directing a remand, I would include the fee award as an additional issue to be resolved.
Moreover, I am not persuaded that application of the cy pres doctrine is appropriate in the class action setting. I would hold that any funds remaining at the conclusion of the claims process should be distributed to class members where possible or should be escheated to the government.
The petition for legal fees here presents an all-too-familiar scenario. Plaintiffs’ lawyers submitted their justification for a substantial fee, emphasizing the risks of an unsuccessful outcome for class members and attributing the negotiated settlement to exceptional skill and dedication. Defendants remained silent on the issue, likely because, as we have observed on a number of occasions, they were interested primarily in “buying peace.” See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819-20 (3d Cir.1995) (“G.M. Trucks”) (“[Tjhis court has recognized that ‘a defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys’ fees is of little or no interest to the defense.’” (quoting Prandini v. Nat’l Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977))).
Recognizing the parties’ disincentives to invoke judicial scrutiny of fee awards, as well as the potential for a “misalignment of the attorneys’ and the class’s interests,” id. at 821, we have held that “a thorough judicial review of fee applications is required in all class action settlements,” id. at 819. The purpose of this robust and exacting review is to detect not only “actual abuse” caused by attorney-class conflict, but also “potential public misunderstandings [that such conflict] may cultivate.” Id. at 820 (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 225 (2d Cir.1987)).
Given the plaintiffs’ desire to enforce the judgment and the defendants’ longing to be done with this litigation, it is not surprising that no party to this appeal has challenged the attorneys’ fee award. Nevertheless, that does not, in my opinion, relieve this Court of the responsibility it has assumed to ensure that the award is reasonable.
I.
The Notice of Appeal cites the judgment enforcing the settlement agreement, a component of which included the fee award. Accordingly, our jurisdiction over that matter is not in question. The issue here is whether sua sponte review of the reasonableness of the attorneys’ fee award is appropriate in these circumstances where the matter has not been briefed.
The courts’ general policy, born in part of historically self-imposed limitations and as a means of coping with overburdened dockets, is to deny review of issues not briefed on appeal. See, e.g., Pfeifer v. Jones & Laughlin Steel Corp., 678 F.2d 453, 456-58 (3d Cir.1982), vacated on other grounds, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) (failure to object in district court to measure of damages barred appellate review of that issue). Pfeifer, however, did not purport to make this policy absolute.
Nor has the Supreme Court definitively resolved the issue of reviewability. In Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the Court said, “The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule.”
*360 A noteworthy case in this field is Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), whose landmark holding — that in diversity cases, substantive state law, not federal common law, controls — addressed an issue never raised by the parties.[1]
Sua sponte determination of an issue may be especially appropriate where the matter involves more than just the individuals, and addresses a matter of concern to the courts and the judicial system. It is also proper where such determination will neither require nor result in much great additional work for the court or the parties.[2]
As lawyers and courts make more frequent use of, and grow increasingly reliant on, the conveniences offered by class actions (and particularly settlement class actions), it becomes ever more incumbent on the appellate courts to ensure that resort to these forms of mass litigation leads to outcomes that reflect positively on the courts and the judicial system. Cf. G.M. Trucks, 55 F.3d at 820 (court must “be alert to the presence in the fee agreement of any actual abuse or appearance of abuse capable of creating a public misunderstanding”). Vigorous review of attorneys’ fee awards by the appellate courts, to certify that such awards are neither incongruous with the work performed nor excessive in light of the results obtained for class members, will reinforce the public’s confidence in the judicial system.
I do not part ways with the result in the Pfeifer case, because here there are two critical differences. First, on the issue of attorneys’ fees, the class was not independently represented in the district court or before this panel. Unlike other items in the settlement agreement, where the self-interests of both plaintiffs and defendants were in play, no such constraints dominated the determination of a reasonable fee award.
Second, we have adopted a policy of closely monitoring fees in class actions. See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 731 (3d Cir.2001) (granting standing to a non-intervening class member seeking to challenge fee award on appeal because “reviewing courts retain an interest — a most special and predominant interest — in the fairness of class action settlements and attorneys’ fee awards”). Failing to raise reasonableness sua sponte would undermine that commitment. See id. at 729-30 (“it would be preposterous to hold that, even where a district court awarded a fee of 75% of the recovery to class counsel, we would have no power to review such an inappropriate and outrageous award in the absence of an objector”).
Furthermore, because this case will be remanded to the trial court on other is *361 sues, remand for determination of the propriety of the fee award would not create much additional work for the trial court or class counsel.
In view of the circumstances here, I have no reservations about discussing the fee award even though the parties have not briefed that matter. The class action judgment as a whole is before the panel, and this Court has assumed the responsibility of monitoring fee awards. The parties may not thwart that policy by failing to brief the issue. Accord G.M. Trucks, 55 F.3d at 801 (“Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed”).
II.
The literature and court opinions discussing fees in class actions are voluminous and need not be examined at length here.[3] Suffice it to say that, whether on its face a fee of 31% — or approximately $7.5 million — of a recovery of $24 million is reasonable requires more information than the record discloses.
In reviewing an award of attorneys’ fees, we apply an abuse of discretion standard. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir.2005). However, we require district courts “to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review” them. Id. at 301; see also Cendant PRIDES Litig., 243 F.3d at 728 (district court must perform “extensive analysis and inquiry before determining the amount of fees” so court of appeals can exercise its “independent interest in monitoring ... awards”). Cf. Perdue v. Kenny A., — U.S. —, 130 S.Ct. 1662, 1676, 176 L.Ed.2d 494 (2010) (in analogous statutory fee-shifting case, remanding for re-calculation of attorneys’ fees where district court’s methodology prevented appellate courts from exercising “meaningful appellate review”).
There appears to be a perception in many district courts that the twenty-five percent “benchmark” is an appropriate place to begin the fee analysis for most common fund purposes. Too often that is the end of the discussion, rather than a beginning point for determining whether a particular fee is reasonable. In Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir.2000), the Court of Appeals noted the prevalence of routine fee awards during the 1970’s as being in the 20-30 percent area. That range, however, was Tater considered “to yield too little for the client-class,” id. at 48, and other methodologies to calculate fees were adopted, id.
This Court is presented with a record that essentially adopts plaintiffs counsel’s petition without adequate explication. The District Court carefully noted that its consideration of the award was based upon what the class attorneys put forth. I do not impugn the integrity and diligence of counsel by requesting more information on the subject.
Counsel’s efforts appear to have been expended in three general areas: intensive negotiations and mediations sessions with defense counsel; inspection of large quantities of recalled goods to arrive at a stipu *362 lation for preservation of evidence; and motions in the District Court to restrict communications by a few defendants with punitive class members.
An advocate for the reasonableness of the $7.5 million fee might wish to know approximately how many lawyers for the class actually participated in the negotiations with defense counsel and at the mediation sessions. The plaintiffs’ petition refers to one meeting when sixty lawyers appeared for the defendants. It seems unlikely that this was typical of the mediation or bargaining sessions, although it points out the difficulty in working out a settlement with a large, unorganized group. But, for purposes of review, it would be helpful to know, at least in general terms, what amount of legal talent was needed — and how many lawyers actually were present — at the negotiation and mediation sessions.
Plaintiffs’ counsel commendably notes their obligation to avoid duplication in the division of legal work. Yet, apart from this general acknowledgement, the petition is vague in demonstrating the efficient use of the personnel available.
For example, counsel discussed in general terms proper efforts to delegate various tasks among the many lawyers. However, there remains the possibility that, in light of the large number of consolidated class actions — and the lawyers involved with each such action — much time was devoted to task assignment and coordination among the many law firms. An appropriate inquiry would be whether that organizational activity was a necessary and limited legal function, and thus a reasonable expenditure that benefitted the class as a whole.
The difficulty in proving liability in the underlying suit is another factor to be considered in justifying the size of a fee. When defendants’ culpability is clear, less is required of plaintiffs’ counsel than when responsibility is sharply contested. In this connection, the amount of spade work done by government agencies bears on the reasonableness of the fee.
Both the Federal Drug Administration and the Justice Department investigated the tainted products at issue here. Although no enforcement was undertaken by the FDA, indictments were issued against some of the defendants. Plaintiffs do not adequately discuss the benefits that the class derived from the government’s action but merely point out that it did not solve all of the liability problems. Counsel should not charge the class for acquiring evidence of culpability by piggy-backing on the criminal and agency proceedings. Although the liability here may well not have been foolproof, seeking recovery for loss caused by a recalled contaminated product is hardly an insurmountable task. A demonstration of the benefits derived by the class from the government’s investigation would be of assistance for purposes of our review.
Generally, we allow lead counsel to distribute the total fee award to other participating lawyers. However, no explanation here has been given for the difference in fees requested for the American lawyers (25%), and the Canadian lawyers (6%). There may well be sound reasons for asking approval of this allocation. However, the Court should have been given the basis for that sharp difference in distribution and been permitted to review its reasonableness.
Plaintiffs’ counsel asserted that, prior to MDL consolidation, some defendants had contacted putative members of the class, attempting to secure information about the potential value of their claims and, in some instances, directly or indirectly attempting to settle claims. Counsel brought this to the attention of the District Court and, with entry of a consent order, resolved the *363 matter amicably. To what extent those proceedings were helpful to the class — as contrasted to the interests of class counsel — is not discussed in the record, nor is the relative amount of the total fee award attributed to this issue analyzed.
In another phase of the case, counsel inspected the recalled food at several warehouses, leading to agreements allowing defendants to dispose of most of this contaminated material, leaving enough for evidentiary purposes if necessary at a trial. On the surface, this appears to be a straightforward task, not requiring extensive activity by highly experienced lawyers. There may be justifiable reasons for the fee charged to that work, but the lack of record information forecloses a robust review.
It may be that, on remand, plaintiffs’ counsel could develop an adequate record to demonstrate the reasonableness of the $7.44 million fee. At this stage, however, I believe that further explanation is warranted before this Court puts its imprimatur on the award.
III.
The settlement agreement also provides that any funds remaining after administration of the settlement and payment of all valid claims will be distributed to animal welfare-related organizations in the United States and Canada. The size of this charitable gift is immeasurable at this point and may indeed be insignificant at the conclusion of all proceedings. However, I do not believe that application of the cy pres doctrine is appropriate in litigation of this nature.
Cy pres was historically used in testamentary trusts where it was not possible to distribute funds in precise accordance with the testator’s wishes. In such cases, the money was distributed in a manner that came as close as possible (in Norman French, “cy pres comme possible ”) to the testator’s original intent. That doctrine is well established in the law.
Applying cy pres to the class action before us, however, is quite another matter. Certainly, this law suit is not charitable. There are no individuals whose wishes need be considered and there is no intent to benefit charitable purposes that can be attributed to the class members or the lawyers who established the fund.
Traditionally, unclaimed monetary awards have escheated to the state. The application of that rule seems reasonable and in accordance with general legal and equitable principles. Here, the parties benefitted by the action of the state in providing a forum to resolve their differences and, in that light, repayment to the government to defray some of the costs of the court system would be in the nature of a user fee.
We deal here with charitable contributions to which members of the class never voiced any interest or approval and a procedure subject to criticism as an inappropriate judicial function.[4]
I would require the District Court to reconsider the disposition of any funds remaining at the conclusion of this litigation. Distribution to the class members who have not received complete compensation should be considered first. If such pay *364 ments are not feasible or are unduly difficult, the fund should escheat to the government.

. See Albert Tate, Sua Sponte Consideration on Appeal, 9 Trial Judges J. 68 (1970), as reprinted in Robert Leflar, Appellate Judicial Opinions 126, 127 (1974). As Justice Tate explained, "[a] strong majority felt that the new principle announced was the correct law.... To fail to apply the right principle now, approving by inference the wrong or former one ... might cause injustice not only to present litigants, but also to numerous others erroneously relying upon th[at] principle.” Id.

. The scope of appellate review in this area has been the subject of spirited academic discussion. See Robert J. Martineau, Considering New Issues on Appeal: The General Rule and the Gonlla Rule, 40 Vand. L.Rev. 1023 (1987); Rhett R. Dennerline, Pushing Aside the General Rule in Order to Raise New Issues on Appeal, 64 Ind. L.J. 985 (1989); Allan D. Vestal, Sua Sponte Consideration in Appellate Review, 27 Fordham L.Rev. 477 (1959), as reprinted in Robert Leflar, Appellate Judicial Opinions 129, 130 (1974); B.E. Watkins, Manual of Appellate Court Opinions 154 (1977).

. For a small example of appropriate scholarly commentary, see Dennis E. Curtis & Judith Resnick, Contingency Fees in Mass Torts: Access, Risk, and the Provision of Legal Services When Layers of Lawyers Work for Individuals and Collectives of Clients, 47 DePaul L.Rev. 425 (1998); John C. Coffee, Jr., Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is not Working, 42 Md. L.Rev. 215 (1983); John C. Coffee, Jr., Understanding the Plaintiff’s Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions, 86 Colum. L.Rev. 669 (1986).

. See Adam Liptak, Doling Out Other People’s Money, N.Y. Times, Nov. 26, 2007, at A14; Editorial, When Judges Get Generous: A Better Way to Donate Surpluses from Class-Action Awards, Wash. Post, Dec. 17, 2007. Cf. Am. Law Inst., Principles of the Law: Aggregate Litigation, § 3.07, at 218-19 (2010) (rejecting "the position ... that a cy pres remedy is preferable to further distributions to class members” and recommending that courts make numerous inquiries as to the viability of additional payments to the class before consideration of the cy pres remedy).